

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 15, 2021

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Joseph Hoats*, S1 19 Cr. 67 (PGG)

Dear Judge Gardephe:

    The defendant in this case, Joseph Hoats, is scheduled to be sentenced on May 3, 2021. For the reasons set forth below, the Government submits that a sentence within the Guidelines Range of 15 to 21 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**A.   Factual Background**

    The defendant's conviction in this case arises from his false statements in a sworn declaration that were made to conceal his involvement in a scheme to extract value from a fictitious and forged settlement agreement between Christopher and Susan Hammatt and the General Motors Company ("GM")

    In January 2015, Joseph Hoats, a licensed attorney in California, filed a lawsuit ("Lawsuit One") on behalf of Christopher and Susan Hammatt, a married couple, against the General Motors Company ("GM"), alleging "traumatic brain injury" to Christopher Hammatt arising from defects in a GM vehicle that caused airbags to deploy without notice. The complaint sought $100 million in damages, alleging that the purported injuries caused Christopher Hammatt to lose "his career as a successful attorney in Southern California and caused his family to lose a father, husband and a role model." Hoats signed the Lawsuit One complaint, and the complaint listed his office address and telephone number, as well as a Hotmail address in his name (the "Hoats Hotmail"). (Presentence Investigation Report ("PSR") ¶ 9.)

    In March 2015, Lawsuit One was transferred to the United States District Court for the Southern District of New York ("SDNY") and consolidated with the GM "Ignition Switch" multi-district litigation (the "GM MDL"), overseen by the Honorable Jesse M. Furman. The Hammatts and Hoats voluntarily dismissed Lawsuit One after it was transferred to SDNY. (PSR ¶ 10.)

In the summer of 2015, the Hammatts filed a second lawsuit ("Lawsuit Two") against GM in the Central District of California. Like Lawsuit One, Lawsuit Two alleged that Christopher Hammatt sustained injuries from the deployment of an airbag in his GM vehicle. However, in an apparent attempt to avoid transfer to SDNY, the Hammatts removed allegations related to the vehicle's ignition switch. Nonetheless, in December 2015, the United States Judicial Panel on Multidistrict Litigation transferred Lawsuit Two to SDNY and consolidated it with the GM MDL. (PSR ¶ 11.)

Hoats was also the attorney of record for the Hammatts in Lawsuit Two. The Lawsuit Two complaint listed a Gmail address in Hoats's name (the "Hoats Gmail Account") as his email and listed Hoats's office address and telephone number. According to records obtained from the clerk of the United States District Court of the Central District of California, Hoat's CM/ECF account was used to commence both Lawsuit One and Lawsuit Two and the Hoats Hotmail Account received ECF notifications in both cases. Based on records obtained from Google LLC, the Hoats Hotmail Account received ECF notifications in Lawsuit One and Lawsuit Two and the Hoats Gmail Account appeared to auto-forward communications to the Hoats Hotmail Account, including communications with counsel for GM about Lawsuit Two. Furthermore, the Hoats Hotmail Account was the recovery address for the Hoats Gmail Account, and text message communications between Hoats and Christopher Hammatt showed that Hammatt furnished to Hoats the Hoats Gmail Account login information. (PSR ¶ 12.)

In March and April 2016, the user of the Hoats Gmail Account corresponded with counsel for GM about a potential settlement of Lawsuit Two. Counsel for GM requested documentation about, among other things, Christopher Hammatt's asserted injuries and damages. GM never received the requested materials. (PSR ¶ 13.)

In the summer of 2016, the users of the Hoats Gmail Account and an email address in the name of "Craig Johnson," who purported to be Hoats's paralegal but in reality was Christopher Hammatt, emailed multiple litigation funding companies in an effort to get a loan on behalf of the Hammatts on the basis of a fictitious settlement agreement with GM. For example, in an August 5, 2016 email to a litigation funding company, the Hoats Gmail Account wrote, "Hi, we have another client that is Suing GM and it appears we have a settlement on the Table for $16.5 million, but the client is hurting financially and it will take another 3 to 4 months before they see their money." On August 7, 2016, "Craig Johnson" and the Hoats Gmail Address emailed a fictitious $16.5 million settlement agreement between the Hammatts and GM. The fictitious settlement agreement appeared to be signed by Hoats. (PSR ¶ 14.)

On August 8, 2016, in an effort to induce a litigation funding company to lend money to the Hammatts on the basis of the fraudulent settlement agreement, "Craig Johnson" sent another email, which did not copy either of the Hoats email accounts, which stated:

> Mr. Hammatt was one of the brotherhood. The family has lost their cars, their home(s), their boat, and other items. Mrs. Hammatt had to sell her husband's watches, his gun collection, she has sold almost all of her jewelry and artwork they owned. I know that they will be getting a large sum of money in about six months, but it is so sad to see this family suffer. They are on food stamps and get donations

from the Church for their kids clothing.  Please don't let Mr. Hoats know I sent you this.  I am the one who deals with the clients almost every day.

(PSR ¶ 15.)

On August 10, 2016, the Hammatts and Hoats executed a $75,000 lending agreement with a litigation funding company.  Each of Christopher Hammatt, Susan Hammatt, and Hoats signed the funding agreement, and each signature was notarized.  Based on a law enforcement interview, the notary who witnessed Hoats's signature confirmed Hoats's identity by inspecting Hoats's driver's license before Hoats signed.  On August 11, 2016, the funding company wired $30,000 to Susan Hammatt's bank account.  (PSR ¶ 16.)

After Lawsuit Two was filed, the Hammatts repeatedly failed to comply with their discovery obligations, and Judge Furman granted GM's motion to dismiss Lawsuit Two.  In or about March 2017, the Hammatts retained new counsel for Lawsuit Two, and new counsel filed a motion to reopen the case.  GM opposed the motion.  (PSR ¶ 17.)

During motion practice related to the Hammatts' motion to reopen their case against GM, Hoats submitted a letter and a sworn declaration (attached hereto as Exhibit A) to Judge Furman in which Hoats falsely claimed that he had no knowledge of Lawsuit Two or the Hoats Gmail Account, which was listed on the Lawsuit Two complaint and was used to correspond with GM's counsel and litigation funding companies.  For example, Hoats falsely claimed, among other things: "Since I had no access to [the Hoats Gmail Account], I was not monitoring same and could not know to monitor this particular email account."  Hoats also falsely claimed that he had not been checking the Hoats Hotmail Account, which would have alerted him to the existence of Lawsuit Two:  "I had no urgent reason to be checking my Hotmail account for a large part of the calendar year of 2016 and 2017 to date, prior to the revelation of my alleged representation of Plaintiffs in this instant action."  These statements, among others in the declaration, were false.  (PSR ¶ 18.)

Pursuant to his plea agreement, Hoats has acknowledged that prior to submitting his sworn declaration, Hoats was "aware of, and acquiesced in others' use of, [the Hoats Gmail Address] and that [Hoats's] statements in the sworn affidavit were intended to mislead the court about such knowledge and acquiescence."

Hoats's false statements caused the Government and the courts to expend considerable resources.  First, Judge Furman and his staff had to review and consider briefing and extensive supporting materials related to the fraud and ultimately ordered an evidentiary hearing, which did not occur.  Second, the Government conducted an extensive investigation into Hoats's lies.  (PSR ¶ 20.)

B.  The Plea and Guidelines Calculation

On October 30, 2020, the defendant pled guilty before Magistrate Judge Ona T. Wang to Count One of the Superseding Information, perjury, in violation of Title 18, United States Code, Section 1621.  The defendant pled guilty pursuant to a plea agreement with the Government.

Under this plea agreement, the defendant's stipulated guidelines range is 15 to 21 months' imprisonment (the "Guidelines Range"), calculated as follows. Pursuant to United States Sentencing Guidelines ("U.S.S.G.") section 2J1.3(a), the base offense level is 12. Pursuant to U.S.S.G. § 2J1.3(b)(2), three levels are added because the perjury resulted in substantial interference with the administration of justice. Accordingly, with acceptance of responsibility credit, the applicable Guidelines offense level is 14. On November 10, 2020, the Court accepted the defendant's guilty plea. (Dkt. No. 110.)

**C. Discussion**

    **1.    Applicable Law**

As the Court is aware, the Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

    **2.    A Guidelines Sentence Is Reasonable in This Case**

The Government respectfully submits that a sentence within the Guidelines Range of 15 to 21 months' imprisonment is sufficient, but not greater than necessary, to comply with the purposes of sentencing. The Section 3553(a) factors most applicable in this case include the nature and

seriousness of the offense, the need to provide just punishment for the offense, the need to promote respect for the law, and the need to afford adequate deterrence to criminal conduct.

A sentence within the Guidelines Range reflects the nature and seriousness of the offense, provides just punishment, and promotes respect for the law. The defendant, an attorney, made numerous false statements to Judge Furman, under oath, in a misguided attempt to conceal his involvement in a fraud scheme perpetrated by two of his clients. Specifically, the defendant and his clients, the Hammatts, used the federal court system in a scheme to defraud GM of millions of dollars and a related scheme to defraud litigation funding companies. When the scheme unraveled, and Judge Furman attempted to question the defendant and the Hammatts, the defendant lied (repeatedly) under oath in an attempt to dodge accountability. In particular, the defendant made false statements designed to distance himself from the fraud scheme.

The defendant's conduct breached his oath as an officer of the court and constituted a serious violation of the law. This conduct is extremely serious and, if left unchecked, undermines the faith of the public in our judicial system and the ability of courts to fairly apply the law and decide cases. It is rather easy to file a false affidavit. Where such conduct is uncovered, whether for the purpose of deceiving the court, avoiding liability, or furthering a fraud, it should be met with appropriate consequences.

A sentence within the Guidelines Range is also necessary to advance general deterrence. As discussed above, it is all too easy to make false statements under oath and get away with it. If relied on, these statements can cause litigants to improperly lose their case, property, or liberty. Such deception undermines the public's faith in the ability of U.S. courts to efficiently and fairly administer the law. Thus, a sentence within the Guidelines Range would help in communicating to other similarly situated individuals, including attorneys, that there is a cost to intentionally deceiving the courts and obstructing justice.

### D. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the Guidelines Range of 15 to 21 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: /s/
Nicholas W. Chiuchiolo / Jun Xiang
Assistant United States Attorney
(212) 637-1247 / 2289

cc: Amy Gallicchio, Esq. (via ECF)